# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

DIGITAL LANDSCAPE INC.,

        Plaintiff,

v.

        Case No.: 1:21-cv-1174-JES-JEH

MAUI JIM USA, INC. and MAUI JIM, INC.,

        Defendants.

## COMBINED MEMORANDUM IN SUPPORT OF MAUI JIM'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OF NON-INFRINGEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................2

    A.    The '935 Patent ...........................................................................................2

    B.    The '935 Patent Was Born Out Of A Failed Company Built on
        Deception ......................................................................................................4

III.   THE ACCUSED MAUI JIM SUNGLASSES.....................................................6

IV.    LEGAL STANDARDS ........................................................................................8

    A.    Judgment on the Pleadings..........................................................................8

    B.    Summary Judgment Standard ......................................................................8

V.     ARGUMENT ........................................................................................................9

    A.    Maui Jim Is Entitled To Judgment On The Pleadings Of Non-
        infringement.................................................................................................9

        1.     The Lenses of the Accused Maui Jim Sunglasses Do Not
               "Fit Within" The Frames .................................................................9

            a.     Claim Construction ...............................................................9

            b.     "Fit Within" Means The Frame Surrounds The Lens...................10

            c.     The Lenses in The Accused Maui Jim Sunglasses
                 Do Not "Fit Within" The Frames....................................12

            d.     Judgment On The Pleadings Is Appropriate .................................13

        2.     The Accused Maui Jim Sunglasses Do Not Infringe Claims
            1-10 For The Additional Reason That They Do Not Have A
            Bifocal Element In The Outer Lens Layer.................................14

    B.    Alternatively, Maui Jim Is Entitled to Summary Judgment of Non-
        Infringement.................................................................................................16

        1.     Introduction...........................................................................16

        2.     Undisputed Material Facts ......................................................16

        3.     To The Extent The Court Considers Material Outside the
            Pleadings, Maui Jim Is Entitled To Summary Judgment of
            Non-Infringement For the Same Reasons Stated Above ..........................18

        4.     Additionally, Maui Jim is Entitled To Summary Judgment
            of Non-Infringement of Claims 1-10 Because It Does Not
            Practice Other Elements of Claim 1........................................18

VI.    CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................... 9

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .............................................................................. 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................... 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .................................................................................... 8

*Dicon Global Inc. v. Senco Sensors, Inc.*,
No. 04 C 2085, 2004 U.S. Dist. LEXIS 23758, .................................................. 12

*Digital Landscape Inc v. Maui Jim, Inc.*,
No. 18-cv-01391 (C.D. Cal.) ................................................................................. 1

*Duncan Parking Techs., Inc. v. IPS Grp*,
914 F.3d 1347 (Fed. Cir. 2019) ..................................................................... 14, 16

*Eagle Pharms. Inc. v. Slayback, Pharma LLC*,
958 F.3d 1171 (Fed. Cir. 2020) ........................................................................... 14

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ............................................................................. 16

*London v. Carson Pirie Scott & Co.*,
946 F.2d 1534 (Fed. Cir. 1991) ........................................................................... 13

*Milwaukee Police Ass'n v. Flynn*,
863 F.3d 636 (7th Cir. 2017) ................................................................................. 8

*Motionless Keyboard Co. v. Microsoft Corp.*,
486 F.3d 1376 (Fed. Cir. 2007) ........................................................................... 12

*Ono's Trading Co. LLC v. Parnell*,
Civil Action No. 04-0706-CG-C, 2006 U.S. Dist. LEXIS 111433 (S.D.
Ala. Nov, 22, 2006) .................................................................................... 4, 5, 6

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018) ........................................................................... 14

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 10

*SLT LLC v. Tran*,
   No. 07-0815, 2009 U.S. Dist. LEXIS 16687 (S.D. Ala. March 3, 2009) ............................ 6

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015) ........................................................................................... 10

*Tierney v. Vahle*,
   304 F.3d 734 (7th Cir. 2002) ................................................................................. 16

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................................... 10

*Wagner v. Teva Pharms. USA, Inc.*,
   840 F.3d 355 (7th Cir. 2016) ................................................................................... 8

*Wang Labs., Inc. v. Am. Online, Inc.*,
   197 F.3d 1377 (Fed. Cir. 1999) ............................................................................. 12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ................................................................................................ 13

*Watterson v. Page*,
   987 F.2d 1 (1st Cir. 1993) ................................................................................. 8, 16

## **Rules**

Fed. R. Civ. P. 12 ........................................................................................................ 8, 16

Fed. R. Civ. P. 56 ............................................................................................................. 9

## I.    INTRODUCTION

In this patent case, Digital Landscape is accusing Maui Jim of infringing U.S. Patent 7,093,935 ("the '935 patent"). The '935 patent claims methods of making bifocal sunglasses and lenses for bifocal sunglasses that have particular features. Maui Jim does not infringe any claims of the '935 patent because there are multiple claim elements missing from the accused Maui Jim sunglasses. First, every claim requires edging lenses "to fit within" a sunglasses frame. The accused Maui Jim sunglasses, however, are rimless sunglasses in which the lenses do not fit within a frame. Second, claim 1 requires placing a bifocal element in the *outer* layer of the lens; in the accused Maui Jim sunglasses, the bifocal element is in the *inner* layer of the lens.

This is a case that never should have been filed. Digital Landscape first approached Maui Jim about the '935 patent in 2017 and then sued Maui Jim for infringing the '935 patent in the Northern District of California in 2018. *Digital Landscape Inc v. Maui Jim, Inc*., No. 18-cv-01391 (C.D. Cal.). Maui Jim explained to Digital Landscape why the '935 patent was not infringed and invalid and Digital Landscape went away - it dismissed the California complaint without prejudice and went silent for more than two years. Then, in 2021, Digital Landscape hired new counsel and contacted Maui Jim with the same allegations it had already raised and dropped once before. Enough is enough. These are simple products whose physical construction is clear from the pleadings. No discovery is necessary for the Court to enter judgment of non-infringement. Alternatively, to the extent the Court wishes to consider materials outside of the pleadings, summary judgment should be entered.

## II.     BACKGROUND

### A.     The '935 Patent

The '935 patent is directed to bifocal sunglasses. (Dkt. 1, Complaint, Ex. A). According to the '935 patent, "to the inventor's knowledge, no plano lenses have been made with a multifocal segment (such as a bifocal) and polarization.  Thus, a need has arisen for polarized sunglasses and lenses that include multifocal segments and which are made from thin lens blanks." (*Id*. at col. 1, ll. 33-37).[1]

The '935 patent describes a multilayer lens and sunglasses that include such a lens.  As shown in the annotated version of Figure 2 reproduced below, "lens 10 includes a bifocal segment 12, a polarizing layer 14, an inner lens layer 16, and an outer lens layer 18."  ('935 patent, col. 2, ll. 56-57).  As shown in Figure 2, the "outer lens layer" is on the convex side of the lens facing away from the user and the "inner lens layer" is on the concave side of the lens facing toward the user.



Fig. 2

---

[1] As discussed below, the named inventor, Stuart Parnell, later told the Patent Office that there was nothing new about his bifocal sunglasses and that there were several companies selling bifocal sunglasses before 2004 in order to invalidate one of his other patent applications.

The specification states that the "bifocal segment 12 may be part of the outer lens layer 18, but also may be a separate piece attached (such as by, without limitation, adhesion) to the outer lens layer 18.  In a preferred embodiment, outer lens layer 18 is molded around the bifocal segment 12."  ('935 patent, col. 3, ll. 1-5).

The specification explains that "a pair of lenses may be set in frames to make a pair of sunglasses.  Before being set in the frames, the lenses are edged to fit the frames."  ('935 patent, col. 3, ll. 31-34).  This is shown in Figure 3, reproduced below:



*Fig. 3*

The specification of the '935 patent describes only the physical construction of the lenses and sunglasses.  It does not disclose any specific techniques for making lenses and sunglasses, such as how to make the lenses, how to incorporate the bifocal segment into the lens, or how to edge the lenses.  Nevertheless, all fifteen claims of the '935 patent are styled as method claims that list very general steps for making sunglasses or sunglass lenses.  Claims 1 and 11 are the only independent claims.  Claim 1 is directed to a method of making a sunglass lens and reads as follows:

> 1.      A method of making a sunglasses lens, comprising:
> providing a bifocal segment;
> molding an outer lens layer around the bifocal segment;

combining the outer lens layer with an inner lens layer and a polarizing
layer to form a sunglasses lens blank, wherein the combined
thickness of the outer lens layer, the inner lens layer, and the
polarizing layer is less than 5 millimeters without grinding of any of
the layers; and

edging the sunglasses lens blank to fit within a sunglasses frame.

Claim 11 is directed to a method of making sunglasses and reads as follow:

11.    A process for making sunglasses, comprising:

providing a pair of polarized lens blanks, wherein each of the polarized lens blanks
includes a bifocal segment, and wherein each of the polarized lens blanks has a
thickness of less than 5 millimeters without grinding;

providing a sunglasses frame;

edging the polarized lens blanks to fit within the sunglasses frame; and

setting the edged polarized lens blanks in the sunglasses frame.

### B.    The '935 Patent Was Born Out Of A Failed Company Built on Deception

The named inventor of the '935 patent, Stuart Parnell, formed Ono's Trading Company,
LLC ("Ono's") in October 2003. *Ono's Trading Co. LLC v. Parnell*, Civil Action No. 04-0706-
CG-C, 2006 U.S. Dist. LEXIS 111433, at *2 (S.D. Ala. Nov, 22, 2006). Shortly thereafter, in
November 2003, Mr. Parnell filed patent application No. 10/720,879 entitled "Multifocal
Sunglasses, Glasses, and Lenses" ("the '879 application") and assigned the '879 application to
Ono's. *Id*. at *3-5; Ex. 1 ('879 Application). Mr. Parnell brought on several investors in Ono's,
but things quickly fell apart. In April 2004, Mr. Parnell filed for personal bankruptcy and then in
August 2004 he entered into a separation agreement with Ono's. *Id*. at *7. Ono's continued
operating without Mr. Parnell.

Just two weeks after leaving Ono's, Mr. Parnell filed the application for the '935 patent
and formed a new company, SLT, LLC. *Id*. at *9, *17. As he did with Ono's, Mr. Parnell found
investors for his new company, a husband and wife team of Tri and Lien Tran, and began

making bifocal sunglasses. *Id.* at *18. Ono's promptly filed suit against Mr. Parnell for, *inter alia*, theft of trade secrets and violating his separation agreement with Ono's.

At this time, Mr. Parnell had two patent applications pending at the Patent Office: the '879 application that Mr. Parnell assigned to Ono's and the application for the '935 patent that he filed two weeks after leaving Ono's. In the application for the '935 patent, Mr. Parnell copied much of the disclosure he made in the '879 application, and expressly incorporated the '879 patent by reference. *Id.* at *10-11; see also '935 patent, col. 2, ll. 50-54. Mr. Parnell and Ono's engaged in a letter-writing campaign with the U.S. Patent Office in which Mr. Parnell told the Patent Office that the claims in the '879 application were invalid and Ono's told the Patent Office that the claims in the application for the '935 patent were invalid. *Id.* at *15-16; Ex. 2 ("[Action Optics] have produced their ready-to-wear bifocal series for 10 years"). [2]

After years of litigation, the Southern District of Alabama found that Mr. Parnell violated his duty of loyalty to Ono's and that "Parnell's conduct was willful and malicious . . . Parnell has attempted in every way imaginable to avoid his duties and obligations to [Ono's] with the purpose of benefitting himself financially and harming [Ono's] interests." *Ono's Trading*, 2006 U.S. Dist. LEXIS 111433, at *37. The court then ordered Mr. Parnell to assign the '935 patent to Ono's, which he did on December 20, 2006.

While at SLT, Mr. Parnell filed another bifocal sunglass patent application in the name of his business partner, Tri Tran, on February 9, 2006. *SLT LLC v. Tran*, No. 07-0815, 2009 U.S. Dist. LEXIS 16687, at *3(S.D. Ala. March 3, 2009). That application, which led to U.S. Patent 7,234,811 ("the '811 patent") (Ex. 3), was filed in Mr. Tran's name "because Parnell and Tri

---

[2] They were both right. Ono's had the good sense to abandon the '879 application in March 2006. Mr. Parnell did not exercise the same good judgment and allowed the '935 patent to issue even though he knew it to be invalid.

wanted to avoid the possibility that the patent would be seized if Parnell was found liable in" the Ono's litigation. *Id*. at *18. Eventually, SLT met the same fate as Ono's: Mr. Parnell, the Trans, and SLT ended up in years of district court litigation and the district court once again found against Mr. Parnell. *Id*. at *37

Since the demise of Ono's, the '935 patent has been assigned multiple times and is now owned by Digital Landscape. To the best of Maui Jim's knowledge, Digital Landscape does not make or sell any products and its only business is filing patent lawsuits. Digital Landscape's "place of business" is a mailbox at a UPS Store in a strip mall in Ontario, California. (Complaint, ¶ 1).

## III.    THE ACCUSED MAUI JIM SUNGLASSES

Digital Landscape accuses Maui Jim's Makaha and Ho'okipa Readers of infringing at least claims 1 and 11 of the '935 patent. (Complaint, ¶ 8). The Makaha and Ho'okipa Readers differ in their aesthetic design, but are substantively identical for purposes of this motion. Images of the Makaha and Ho'okipa Readers from the Complaint are reproduced below (Complaint, Ex. C, p. 1 and Ex. D, p. 1):

<table>
<tr><td align="center"><b><u>The Ho'okipa Reader</u></b></td><td align="center"><b><u>The Makaha Reader</u></b></td></tr>
<tr><td align="center"></td><td align="center"></td></tr>
</table>

The Makaha and Ho'okipa Readers are "rimless" sunglasses in which the frame holds each sunglass lens at two points: at the temple endpiece and at the bridge between the two lenses.

The connection points are shown in the figure below with reference to the Makaha Reader. The same connection points apply to the Ho'okipa Reader.



The temple endpiece and bridge are connected by a portion of the frame that extends behind the rear face of the sunglass lens. The sunglass lenses are not enclosed by, encircled by, or otherwise within the frame of the Makaha and Ho'okipa Readers. The only portions of the frame that are attached to the lenses are the temple endpiece and bridge connection points.

The Makaha and Ho'okipa Readers include a bifocal element in each lens. The bifocal element is located on the back of each lens (the side facing the user's eye), as shown in the photographs below:



## IV.    LEGAL STANDARDS

### A.    Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial." Fed. R. Civ. P. 12(c).  To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face and there must be no dispute as to the material facts.  *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 357-58 (7th Cir. 2016).  In resolving a motion for judgment on the pleadings, the Court may consider the pleadings, documents incorporated by reference in the pleadings, and matters subject to judicial notice.  *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).  The primary problem raised by looking to documents outside the complaint — lack of notice to the plaintiff — is dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."  *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

### B.    Summary Judgment Standard

The Federal Rules authorize entry of summary judgment where the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  To obtain summary judgment, the movant need only show "an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When a motion for summary judgment is supported by documentary and testimonial evidence, the nonmoving party may not rest upon the allegations or denials of its pleadings but must instead present significant probative evidence to establish a genuine issue of material fact.  *Id.* at 327; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

## V.    ARGUMENT

### A.    Maui Jim Is Entitled To Judgment On The Pleadings Of Non-infringement

#### 1.    The Lenses of the Accused Maui Jim Sunglasses Do Not "Fit Within" The Frames[3]

Every claim of the '935 patent requires edging a lens "to fit within a/the sunglasses

frame," but the lenses of the accused Maui Jim sunglasses do not "fit within" the frame.  Indeed,

Digital Landscape's Complaint does not even allege that the lenses in the accused Maui Jim

sunglasses "fit within" the frame.  Digital Landscape alleges only that the lenses are "attached

to" the frames (Complaint, ¶ 14 and 18).  The '935 patent, as well as related patents filed by the

named inventor, show that "attached to" does not mean "fit within."  Judgment on the pleadings

is appropriate because the relevant facts regarding the construction of the accused Maui Jim

sunglasses are supported by the Complaint and compel a finding of non-infringement.

#### a.    Claim Construction

Claim construction is a question of law.  *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 135 S.

Ct. 831, 841-42 (2015).  The words of a patent claim "are generally given their ordinary and

customary meaning." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc)

(internal quotation marks and citation omitted).  The proper construction of a claim term is

informed by "intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the

---

[3] While the claims of the '935 patent are phrased as methods of making lenses or sunglasses, the claims nevertheless require the end product to have certain physical features, such as lenses that "fit within" the frames (all claims) or a bifocal element in the outer lens layer (claims 1-10).  If the accused Maui Jim sunglasses do not have these features, then Maui Jim necessarily does not perform the method of making a product having those features.

specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification "is always highly relevant to the claim construction analysis" and "it is the single best guide to the meaning of a disputed term." *Id*. The patent's prosecution history is another critical part of the intrinsic evidence used to interpret claim terms. *Phillips,* 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention").

### b. "Fit Within" Means The Frame Surrounds The Lens

The specification of the '935 patent explains what it means for a lens to "fit within" a sunglass frame with reference to Figure 3, shown below. The specification states that "FIG. 3 shows part of a frame 22, to illustrate that a pair of lenses may be set in frames to make a pair of sunglasses. Before being set in the frames, the lenses are edged to fit the frames." ('935 patent, col. 3, ll. 31-34).



*Fig.* 3

The specification does not disclose any embodiments in which the frame does not surround the lenses. Thus, the specification teaches that lenses "fit within" a frame when the frame surrounds the lenses.

This meaning of "fit within" is confirmed when compared to language that Mr. Parnell used in three closely-related patents and patent applications. In the '879 application that the '935

patent incorporates by reference (col. 2, ll. 50-53), the claims state that the lens is "held by" the frames. (Ex. 1, '879 Application, claims 1, 9, and 15). Similarly, in a continuation of the application that led to the '935 patent, the claims require "coupling the polarized lenses to the sunglasses frame." (Ex. 4, Pub. No. US 2006/0274256, claim 10). Finally, in the '811 patent filed by Mr. Tran on behalf of Mr. Parnell, the claims require "attaching the lenses to the eyeglasses frames" or "coupling the lens to a frame." (Ex. 3, '811 patent, claim 1 and 11). The '811 patent also explains that the lenses may be "molded in the shape desired for the eyeglasses frame in which they will be set or otherwise attached, thus eliminating the need for edging." ('811 patent, col. 3, ll. 35-37) (emphasis added). This description again emphasizes that setting the lens "in" the frame is different from "otherwise" attaching a lens to a frame.

The claims in these three patents and applications teach that Mr. Parnell knew how to claim any way of attaching the lens to the frames, and he chose not to do so in the '935 patent. In the '935 patent, Mr. Parnell chose to claim only lenses that "fit within" the frames. Having made that decision, Digital Landscape should not be allowed to rewrite the claims of the '935 patent to cover lenses that are merely "attached to" sunglass frames. *Wang Labs., Inc. v. Am. Online, Inc.,* 197 F.3d 1377, 1383-84 (Fed. Cir. 1999) (considering related application in construing claims of patent-in-suit).

This construction of "fit within" is also consistent with how courts have construed similar claim language in other patents. For example, in *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380-81 (Fed. Cir. 2007), the Federal Circuit construed a "keyboard within said concavity" to require a keyboard that is "contained entirely within the concave area and sunk below the surface of the housing" because that is what is shown in all of the drawings in the patent. Similarly, in *Dicon Global Inc. v. Senco Sensors, Inc.*, No. 04 C 2085, 2004 U.S. Dist.

LEXIS 23758, at *18-19, the Northern District of Illinois held that "within an electrolyte chamber formed in said third frame member" means "within the fixed limits of an electrolyte chamber formed in the third frame member and not beyond."

        **c.**        **The Lenses in The Accused Maui Jim Sunglasses Do Not "Fit Within" The Frames**

The lenses in the Makaha and Ho'okipa Readers are not surrounded by the frames. The frames are merely attached to the lenses at two points on each lens and no other portion of the frames touches an edge of the lenses. This is shown in the pictures of the Makaha and Ho'okipa Readers in the exhibits to the Complaint (Ex. C, p. 1; Ex. D, p. 1) as well as the following picture of the Ho'okipa Reader that is available at the website that Digital Landscape cited and attached to its Complaint:[4]

**<u>The Ho'okipa Reader</u>**



Therefore, the Maui Jim lenses do not "fit within" the frames when that term is properly construed and there is no literal infringement of any claim in the '935 patent.

Nor do the accused Maui Jim sunglasses infringe the claims of the '935 patent under the doctrine of equivalents. The doctrine of equivalents may not be applied so broadly that it reads an element out of the claims. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39 n.8, (1997) ("[I]f a theory of equivalence would entirely vitiate a particular claim element, partial

---

[4] See www.mauijim.com/US/en_US/shop/sunglasses/rimless/ho-okipa-reader (blue hawaii lens).

or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve."). That is because the public has a right to rely on the language of patent claims. *See London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed. Cir. 1991) ("[I]f the public comes to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims, then claims will cease to serve their intended purpose."). Allowing the claims of the '935 patent to cover lenses that are merely "attached to" the frames would entirely, and impermissibly, vitiate the "fit within" claim element. For example, in *Duncan Parking Techs., Inc. v. IPS Grp*, 914 F.3d 1347, 1362 (Fed. Cir. 2019), a parking meter patent required buttons to be located on the cover panel, but the buttons on the accused meter were located on the device itself, not the cover panel. The Federal Circuit affirmed summary judgment of no infringement because "[a]llowing IPS to greatly expand the scope of the '310 patent claims, to cover a parking meter with buttons located nearly anywhere on the outside of the meter, would disserve members of the public who seek to avoid infringing those claims." *Id.* The same is true with respect to Digital Landscape's attempt to use the doctrine of equivalents to rewrite the claims of the '935 patent to cover products in which the lenses are merely "attached to," and do not "fit within," the frames. The claims require that the lenses "fit within" the frames and that requirement should not be disregarded under the guise of the doctrine of equivalents.

### d. Judgment On The Pleadings Is Appropriate

Digital Landscape's Complaint does not even allege that the lenses of the accused Maui Jim sunglasses "fit within" the frames. (Complaint, ¶ 14, 18). This alone is fatal to its infringement claim. *Bot M8 LLC v. Sony Corp. of Am*., 4 F.4th 1342, 1354 (Fed. Cir. 2021) (dismissing claims because "in pleading its claims, a plaintiff may find it has pleaded itself out of

court.").  Moreover, the Complaint includes pictures of the Maui Jim sunglasses and those pictures show that the lenses do not "fit within" the frames.  See Complaint, Exs. C-F. Because the relevant facts are uncontested and compel a finding of non-infringement, the court should enter judgment on the pleadings.  *See Eagle Pharms. Inc. v. Slayback, Pharma LLC*, 958 F.3d 1171, 1173 (Fed. Cir. 2020) (granting judgment of non-infringement on the pleadings);  *Ottah v. Fiat Chrysler,* 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (affirming dismissal of infringement claim where patent "contains no claim that can be plausibly construed to cover" the accused product).

2. **The Accused Maui Jim Sunglasses Do Not Infringe Claims 1-10 For The Additional Reason That They Do Not Have A Bifocal Element In The Outer Lens Layer**

Claim 1 requires "molding an outer lens layer around the bifocal segment."  The Complaint alleges that "[a]s shown in the images of Defendants' Accused Products (Exhibits B-F), the Accused Products accommodate the bifocal segment by molding an outer lens layer around the bifocal segment."  (Complaint, ¶ 13).  However, those images, two of which are reproduced below, show that there is <u>no</u> bifocal element on the outer lens layer:

**The Ho'okipa Reader**          **The Makaha Reader**

Instead, photos of the back of the Ho'okipa and Makaha Readers, show that the bifocal element is in the *inner* lens layer – the exact opposite of what is required by the claims:

**The Ho'okipa Reader**                    **The Makaha Reader**



Bifocal Elements

Because the bifocal element in the Maui Jim lenses is part of the inner layer, rather than the outer layer, they do not literally infringe claims 1-10. Nor do they infringe claims 1-10 under the doctrine of equivalents. As discussed above, the doctrine of equivalents cannot be applied so broadly that it effectively reads an element out of a claim. Yet this is exactly what would happen if locating the bifocal element in *any* layer is equivalent to the outer layer – the "outer" in the "outer lens layer" claim element would be read out of the claim. *Duncan Parking*, 914 F.3d at 1362.

While the photographs of the back of the Maui Jim lenses provided above are not in the Complaint or the attached exhibits, the Court may nevertheless consider them in ruling on this Rule 12(c) motion because Digital Landscape relied on photos of the accused Maui Jim sunglasses in their Complaint and it accused the Makaha and Ho'okipa readers of infringement. Because Digital Landscape is on notice of these sunglasses and their construction, it is appropriate to consider photos of those sunglasses in deciding Maui Jim's Rule 12(c) motion.[5]

---

[5] Digital Landscape had an obligation to obtain the accused products and perform a good-faith infringement analysis before filing suit. *Judin v. United States*, 110 F.3d 780, 781-82 (Fed. Cir. 1997) (imposing sanctions on Plaintiff that did not obtain the accused products before filing suit). For purposes of this motion, Maui Jim assumes that Digital Landscape obtained samples of the Ho'okipa and Makaha Readers and was able to see and feel that the bifocal element is on

*Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (endorsing reference to materials not attached to Complaint where "the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit"); *Watterson*, 987 F.2d at 3-4.

**B.      Alternatively, Maui Jim Is Entitled to Summary Judgment of Non-Infringement**

**1.      Introduction**

Maui Jim believes the court can find non-infringement based the pleadings and documents cited therein, but if the Court has any concerns and wishes to consider material outside of the pleadings, then summary judgment is appropriate.  For this reason, submitted herewith is the Declaration of Chris McClain (Ex. 5) that provides further support for the facts discussed herein.

**2.      Undisputed Material Facts**

Pursuant to Local Rule 7.1(D)(1)(b), Maui Jim provides the following list of undisputed material facts:

1.      Every claim of the '935 patent requires edging a lens blank "to fit within a/the sunglasses frame." (Complaint, Ex. A, '935 patent, Claims 1-15).

2.      The Makaha and Ho'okipa Readers are "rimless" sunglasses in which the frame holds each sunglass lens at two points: at the temple endpiece and at the bridge between the two lenses.  (Complaint, Ex. C, p. 1 and Ex. D, p. 1; McClain Decl., ¶ 8).

---

the inner lens layer, not the outer lens layer.  Maui Jim reserves the right to seek fees for defending this lawsuit if Digital Landscape did not obtain and analyze the Ho'okipa and Makaha Readers before filing suit.

3.     The lenses of the Makaha and Ho'okipa Readers are not enclosed by, encircled by, or otherwise within the frame of the Makaha and Ho'okipa Readers.  (Complaint, Ex. C, p. 1 and Ex. D, p. 1; McClain Decl., ¶ 9).

4.     The only portions of the frame that touch the edge of the lenses are the temple endpiece and bridge connection points. (Complaint, Ex. C, p. 1 and Ex. D, p. 1; McClain Decl., ¶ 9).

5.     Claims 1-10 of the '935 patent require "providing a bifocal segment" and "molding an outer lens layer around the bifocal segment."  ('935 patent, claims 1-10).

6.     The Makaha and Ho'okipa lenses consist of several layers, including an outer layer that faces away from the user's eye and an inner layer that faces toward the user's eye. (McClain Decl., ¶ 11).

7.     The Makaha and Ho'okipa Readers include a bifocal element in the inner layer of each lens (the side facing the user's eye). (McClain Decl., ¶ 12).

8.     In the Makaha and Ho'okipa Readers, the bifocal element is not a separate element that is attached to or incorporated into the lens during manufacture. (McClain Decl., ¶ 13, 18).

9.     The bifocal element of the Makaha and Ho'okipa Readers is an integral part of the lens that is formed during an injection molding process.  (McClain Decl., ¶ 13-14).

10.    The inner layer of the Makaha and Ho'okipa lenses is formed by placing the outer layer in a mold then injecting molten plastic onto the back of the outer layer.  The mold includes a special contour in the shape of a bifocal element so that when the molten plastic is injected into the mold, the molten plastic takes on the shape of that special contour, thereby integrally forming the bifocal element in the inner layer.  (McClain Decl., ¶ 16).

11.     In manufacturing the Makaha and Ho'okipa lenses, no layer, let alone the outer layer, is molded around a bifocal segment. (McClain Decl., ¶ 19).

### 3.     To The Extent The Court Considers Material Outside the Pleadings, Maui Jim Is Entitled To Summary Judgment of Non-Infringement For the Same Reasons Stated Above

Maui Jim is entitled to summary judgment of non-infringement for the same reasons stated above with respect to its motion for judgment on the pleadings. (See infra V.A). There is no genuine issue of material fact regarding the construction of the Makaha and Ho'okipa Readers. (Undisputed Material Fact ("UMF") 2-4). Maui Jim is entitled to judgment of non-infringement as a matter of law because the lenses of the Makaha and Ho'okipa Readers do not "fit within" the frames and do not have a bifocal segment in the outer lens layer. (*Id*.).

### 4.     Additionally, Maui Jim is Entitled To Summary Judgment of Non-Infringement of Claims 1-10 Because It Does Not Practice Other Elements of Claim 1

Claims 1-10 require two additional manufacturing steps that are not met by the Makaha and Ho'okipa Readers: "providing a bifocal segment" and "molding an outer lens layer around the bifocal element." ('935 patent, claim 1).

In the Makaha and Ho'okipa Readers, the bifocal element is not a separate element that is attached to or incorporated into the lens during manufacture. (UMF 8). Rather, the bifocal element is an integral part of the lens that is formed during an injection molding process. (UMF 9). The Maui Jim lens consists of several layers, including an outer layer that faces away from the user's eye and an inner layer that faces toward the user's eye. (UMF 6). The inner layer is formed by placing the outer layer in a mold then injecting molten plastic onto the back of the outer layer. (UMF 10). The mold includes a special contour in the shape of a bifocal element so that when the molten plastic is injected into the mold, the molten plastic takes on the shape of that special contour, thereby integrally forming the bifocal element in the inner layer. (*Id*.).

In view of the above, Makaha and Ho'okipa Readers are not made by "providing a bifocal segment." The bifocal element is integrally formed as part of the "inner lens layer" and it never exists separate and apart from that layer. In addition, the process for making the lenses for the Makaha and Ho'okipa Readers does not involve "molding an outer lens layer around the bifocal element." The bifocal element is integrally formed part of the inner layer and no layer, let alone the outer layer, is molded "around" a bifocal segment.

Because the process for making the Maui Jim lenses does not involve "providing a bifocal section" or "molding an outer lens layer around the bifocal segment," Maui Jim does not literally infringe claim 1. (UMF 7-11). The process for making the Maui Jim lenses is substantially different from the claimed process and finding infringement under the doctrine of equivalents would require impermissibly reading multiple limitations out of the claim. For this reason, the Court should enter summary judgment of no infringement.

## VI.     CONCLUSION

Maui Jim respectfully requests that the court enter judgment on the pleadings of non-infringement. Alternatively, to the extent the Court considers materials outside of the pleadings, Maui Jim requests that the Court enter summary judgment of non-infringement.


Dated:  September 28, 2021                     Respectfully Submitted,

                                               By: *s/ Mark H. Remus*
                                               Mark H. Remus (Lead Counsel, #6243717)
                                               CROWELL & MORING LLP
                                               455 N. Cityfront Plaza Drive, Suite 3600
                                               Chicago, IL 60611
                                               (312)321-4200
                                               mremus@crowell.com

                                               *Attorney for Defendants*
                                               *Maui Jim USA, Inc. and Maui Jim, Inc.*

Of Counsel:

Laura Lydigsen
John Sabacinski
CROWELL & MORING LLP
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
(312)321-4200

**TYPE VOLUME CERTIFICATE PURSUANT TO CDIL-LR 7.1(B)(4)(c)**

The undersigned certifies that the forgoing memorandum complies with the type volume limitation set forth in CDIL-LR 7.1(B)(4)(b)(1) because it contains 4976 words according to the word count generated by Microsoft Word.

<u>*s/* Mark H. Remus</u>
Mark H. Remus

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2021, I electronically filed the foregoing with the Clerk of the Court using the CMECF system which will send notification of such filing to the following: Chris Zhen.

*/s/ Mark Remus*