IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DIGITAL LANDSCAPE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-1174 |
| ) | |
| MAUI JIM USA, INC. and ) | |
| MAUI JIM, INC. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Pending before the Court is Defendants Maui Jim USA, Inc. and Maui Jim, Inc.'s Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment. Plaintiff responded to the portion of the motion requesting judgment on the pleadings (ECF No. 15) and filed a Motion for Order Pursuant to Rule 56(d) requesting the Court deny the motion for summary judgment as prematurely filed. (ECF No. 16). For the reasons stated below, Defendants' Motion for Judgment on the Pleadings is GRANTED and Plaintiff's Motion (ECF No. 15) is DENIED as moot.

**BACKGROUND**

a.  **Procedural Background**

The following facts are drawn from the Complaint, the exhibits attached to the Complaint, and the filings in a previous federal court case. *See Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (A court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) ("Any written instrument attached to the

complaint is considered part of the complaint."); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988) (exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(b) motion).

Plaintiff Digital Landscape is a corporation organized under the laws of the State of California with a place of business in Ontario, Canada. Plaintiff does not identify what sort of business it conducts, but it is the assignee of United States Patent No. 7,093,935, titled "Multifocal polarized sunglasses and lenses" ("the'935 Patent"). Defendants are corporations that make and sell products, including the sunglasses at issue here, and are incorporated under the laws of Illinois with a place of business in Peoria, Illinois. Plaintiff accuses Defendants of infringing the '935 patent in certain styles of their bifocal sunglasses identified as the Ho'okipa Reader, the Makaha Reader and the Asian fit styles of both of those sunglasses. Plaintiff attached to the Complaint a copy of the patent application as well as photographs of Defendants' bifocal sunglasses.

Plaintiff claims that Defendants have been on notice of the alleged infringement since at least 2017 when it sent Defendants a notice letter regarding the patent.[1] Plaintiff brings one Count of Patent Infringement against Defendants for directly or alternatively, under the doctrine of equivalents, infringing each of the independent claims of the '935 Patent.

Defendants agree that Plaintiff first sent a letter in 2017 and then filed a Complaint against them for the same reasons back in 2018 in California. *Digital Landscape Inc v. Maui Jim, Inc.*, No. 18-cv-01391 (C.D. Cal.). Defendants claim that after they explained to Plaintiff why the patent was not infringed and was otherwise invalid, Plaintiff dismissed the complaint without prejudice. (ECF No. 14 at 5). Defendants claim that there are obvious differences between their bifocal

---

[1] Plaintiff claims that the notice letter is attached to the Complaint as Exhibit F, but Exhibit F is additional photographs of Defendant's products. It appears Plaintiff failed to file a copy of this letter.

sunglasses and the requirements of the patent that demonstrate their products do not infringe Plaintiff's patent.

    a. **Patent Claims**

The Background of the Invention section of the '935 Patent application, notes that a "wide range of sunglasses are available, including prescription sunglasses, polarized sunglasses, and multifocal sunglasses (such as those with bifocal segments)." (ECF No. 1-1 at 4). Plaintiff further acknowledges that the thinner "plano" lenses have been used with "polarizing films to create polarized lenses, they have been tinted for filtering, and they have been made with bifocal segments for multifocal applications." *Id*. at 4. Accordingly, the '935 patent application acknowledges that bifocal and "plano" lenses in sunglasses were already in use at the time but suggests that the innovation in the patent is the combined use of the thin "plano" lens with a multifocal segment and polarization. *Id*. Plaintiff describes the patent as covering the method of making sunglasses that provides a bifocal lens, a polarizing layer, and a thin lens.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824 (7th Cir. 2009) (citing *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the

case to present a story that holds together," to be plausible. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681.

## DISCUSSION

In order to ultimately prove infringement, Plaintiff must be able to show that the accused product meets each claim limitation, either literally or under the doctrine of equivalents. *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003); *see also Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1370 (Fed. Cir. 2000) ("A claim is literally infringed when the accused device literally embodies each limitation of the claim"); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("In order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device") (citation omitted). At this stage, Plaintiff is not required to plead infringement on an element-by-element basis. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Nalco. v. Chem-Mod, LLC*, 883 F.3d 1337, 1342 (Fed. Cir. 2018)). However, Defendants argue that it is clear from the Complaint that its products do not meet two important claim limitations. Defendants claim (1) that its sunglasses are rimless so unlike the patent claims, the lenses are not edged to fit within the frame and (2) that the bifocal piece is not attached in the manner the patent describes. Plaintiff argues that it is inappropriate for the court

to construe the terms of the patent and that it is unfair to even require Plaintiff to brief claim construction because it would deprive Plaintiff of its "right to discovery and to submit claim construction analysis in the context of full discovery of the parties' infringement and validity contentions." (ECF No. at 9).

### a. Courts may engage in claim construction in a Rule 12 motion when the disputed claims are unambiguous.

Construction of written instruments, including patents "often presents a 'question solely of law,' at least when the words in those instruments are 'used in their ordinary meaning.'" *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 319 (2015) (quoting *Great Northern R. Co.* v. *Merchants Elevator Co.*, 259 U.S. 285, 291 (1922)). Even when a term has "evidentiary underpinnings" patent claim construction is a question of law that falls "exclusively within the province of the court." *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)). The words of a patent claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). When a written instrument uses technical terms or other phrases that are not commonly understood, extrinsic evidence may be required to interpret those words of phrases. *Teva Pharms. USA, Inc.*, 574 U.S. at 326 (citing *Great Northern R. Co.*, 259 U.S. at 291).

Defendants also point to *Atlas IP, LLC v. Exelon Corp.*, to support their argument that claim construction is appropriate at the motion to dismiss stage, "at least when it is based on facts alleged in or reasonably inferable from the complaint." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768 (N.D. Ill. 2016) *aff'd sub nom. Atlas IP, LLC v. Cmmw. Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017). The court specifically rejected the plaintiff's argument that it was inappropriate for the court to engage in any claim construction at the motion to dismiss stage and found that the plaintiff brought a "hopeless lawsuit of precisely the sort that the last decade's

5

interpretation of and amendments to the Rules were intended to dispose of quickly and even to deter outright." *Id*. The Federal Circuit upheld the decision. *Atlas IP, LLC v. Cmmw. Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017).

Plaintiff argues that there are cases where courts refuse to engage in claim construction at the pleading stage. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1342 (Fed. Cir. 2018). In *Nalco*, the Federal Circuit reversed the lower court's decision to dismiss a case. There, the patent described a method for removing elemental mercury from the flue gas created by coal combustion in coal fired power plants. *Id*. The patent claimed that it solved the problem from previous failed attempts by injecting halogens in the flue gas to form mercuric halides which precipitated into solid particles that could be filtered from the flue gas more easily. *Id*. The dispute between the parties hinged on "where 'flue gas' may be located within the power plant and what limitations are appropriate on where 'injecting' may occur." *Id*. at 1350. The Federal Circuit found it was not appropriate for the district court to decide those claims without the benefit of claim construction. *Id*. The Federal Circuit further admonished that the plausibility standard does not impose a probability requirement and that the purpose of a motion to dismiss is not to test the merits. *Id*. (citing *Twombly*, 550 U.S. at 556; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)).

In *Nalco*, the parties disagreed about technical terms involved in a complex scientific advancement. In determining that it was not appropriate to decide the claims without the benefit of additional information, the Federal Circuit was not making a blanket rule against construing any claims at the motion to dismiss stage but was responding to the complexity and ambiguity present in the case. *Id*. (noting that the defendant's argument relied on a factual finding that the court could not make at this stage of the case and that the plaintiff provided an alternative explanation that was not inconsistent with its claims). The Federal Circuit's approach appears to be in keeping with the

approach generally taken in contract cases, where courts interpret unambiguous contracts at the motion to dismiss stage as a matter of law and decline to interpret ambiguous contracts as constituting a factual dispute. *See McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) (agreeing that the contract was unambiguous and that the district court correctly dismissed the claim); *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous"); *Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 10 (2d Cir. 2013) (upholding the lower court's decision to dismiss an unambiguous contract); *Golden v. Wiznitzer,* 13 C 9003, 2014 WL 1329397, at *2 (N.D. Ill. Apr. 2, 2014) ("The interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage.") *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006) (under Delaware law, "judgment on the pleadings . . . is a proper framework for enforcing unambiguous contracts"). The Supreme Court has confirmed that interpreting written instruments—whether patents or contracts—involve much the same task. *See Teva Pharm. USA, Inc.,* 574 U.S. at 319. Accordingly, it follows that the that same approach would apply to patent construction with district courts interpreting unambiguous claims at the pleading stage and considering extrinsic evidence in complicated cases where more than one interpretation is reasonable.

The terms here are not technical and do not require expert interpretation. It is also not clear that there is even a dispute about the meaning of the terms in the patent since Plaintiff did not respond to the substance of Defendants' arguments. Plaintiff hides behind its argument that it is "unfair" for the Court to require it to engage in claim construction to avoid directly responding to Defendant's arguments that the lenses do not fit within the frame and that the bifocal piece is attached in a different manner than the patent contemplates. Plaintiff argues that extrinsic evidence

7

is needed to interpret the contract without indicating why there is any ambiguity around the patent terms or why it would be unfair for the Court to require Plaintiff to explain what its own patent means. Given that Defendants argue that the terms should be given their commonplace meaning and Plaintiff offers no alternative construction, the Court agrees that it is appropriate to construe the claim terms.

  b. **Defendants' sunglasses do not directly infringe Plaintiff's patent.**

Plaintiff accuses Defendants' Makaha and Ho'okipa Readers of infringing at least claims 1 and 11a of the '935 patent. Claim 1 of the Patent recites

> a method of making a sunglasses lens, comprising: providing a bifocal segment; **molding an outer lens layer around the bifocal segment**; combining the outer lens layer with an inner lens layer and a polarizing layer to form a sunglasses lens blank, wherein the combined thickness of the outer lens layer, the inner lens layer, and the polarizing layer is less than 5 millimeters without grinding of any of the layers; and **edging the sunglasses lens blank to fit within a sunglasses frame.**

(emphasis added). Defendants argue that the two bolded sections are absent in their products. Plaintiff provides photographs of Defendants' sunglasses in the Complaint and it is clear that the accused sunglasses are rimless in which the frame holds each sunglass lens at two points—the temple endpiece and the bridge between the two lenses. Defendants explain this construction in their Motion (ECF No. 14 at 12). The '935 patent application also includes a photograph that depicts roughly rectangular-shaped lenses with frames surrounding the lenses on all four sides. Accordingly, Defendants argue that the lenses of the accused sunglasses do not fit within the frame as the patent claims require. Defendants further assert that even Plaintiff's Complaint only alleges that the lenses are "attached to" the frames.

In support of their argument regarding the construction of "fit within," Defendants cite *Motionless Keyboard Co. v. Microsoft Corp.*, where the Federal Circuit construed a "keyboard

8

within said concavity" to require a keyboard that is "contained entirely within the concave area and sunk below the surface of the housing" in part, because that was what was shown in all of the drawings in the patent. *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380–81 (Fed. Cir. 2007). The Court agrees that the lenses cannot be edge to fit within the frame when there are no frames and that the term "fit within" requires that the frames surround the lenses as depicted in the diagram of the patent application.

Defendants also argue that the accused sunglasses do not infringe the patent claims because Claim 1 also requires "molding an outer lens layer around the bifocal segment," and the Accused Products do not have a bifocal element on the outer layer. ECF No. 14 at 18. Defendants provide photographs that show the bifocal lens appears on the inside part of the lens that faces the wearer of the sunglasses.[2]

Although Plaintiff suggests that it has a different understanding of what it means for the lens to fit within the frame or for the bifocal to appear on the outer lens, it does not provide an alternative definition. Plaintiff argues that an expert is needed to determine the definition of the outer layer lens. However, in its patent application, Plaintiff clearly identifies the outer layer lens in a series of diagrams which demonstrate that bifocal pieces appear on the concave portion of the lens, facing away from the wearer. Plaintiff offers no potential alternative explanation and does not explain why an expert would be needed to interpret what is evident in the patent application.

---

[2] Defendants include an additional photograph that depicts the bifocal element as being located in the inner layer or "back" of each lens. (ECF No. 14 at 11). Defendants argue that it is appropriate for the Court to consider the photograph without converting the Motion for Judgment on the Pleadings into a Motion for Summary Judgment because the Seventh Circuit has endorsed referencing material not attached to the complaint where "the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Plaintiff mentions the photograph with no objection to the Court considering the photograph for the purposes of this motion. To the extent that Plaintiff may have had any argument to raise regarding the photograph, the Court finds Plaintiff has waived that argument.

There are no terms of art or any complicated scientific material that are beyond the understanding of the Court.

Plaintiff then claims the Court must accept its factual assertions as true, including its assertion that Defendants infringed its patent. (ECF No. 15 at 8). Whether defendants infringed a patent is a legal conclusion and this Court does not automatically accept a complaint's legal conclusions. *See Brooks*, 578 F.3d at 581. Where, as here, the words are used in their commonly understood manner and Plaintiff has not offered any argument about what it believes are the proper interpretations of the disputed terms, the Court sees no obstacle to finding Defendants do not directly infringed Plaintiff's patent.

### c. Plaintiff has not plausibly pleaded that Defendants' products violate its patent under the doctrine of equivalents.

The doctrine of equivalents "allows the patentee to claim insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733, (2002). "A party asserting infringement under the doctrine of equivalents may prove its case by showing, on an element-by-element basis, that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Verinata Health v. Ariosa Diagnostic*, 830 F.3d 1335 (Fed. Cir. 2016). The doctrine of equivalents will support an infringement claim only if "the accused device contains an equivalent for each limitation not literally satisfied." *Wi–Lan, Inc. v. Apple Inc.*, 811 F.3d 455, 463 (Fed. Cir. 2016)). The doctrine of equivalents may not be applied so broadly as to read elements out of a claim and greatly expand the protection beyond the scope of the patent. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8, (1997) ("[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered

by the court); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991) ("[I]f the public comes to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims, then claims will cease to serve their intended purpose"); *Duncan Parking Techs., Inc. v. IPS Grp*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) (affirming summary judgment when the patent required buttons be located on the cover panel of a parking meter, but the buttons on the accused meter were located on the device itself).

Defendants argue that to allow the patent to cover products in which lenses merely attach to the frames and do not fit within them would rewrite and inappropriately broaden the protection of the patent. Defendants claim the same is true if the Court allows the bifocal element to be located in any layer rather the outer layer lens that the patent identifies. Plaintiff fails to plausibly plead a doctrine of equivalents claim in the Complaint, only making the conclusory allegation that in the alternative, Defendants infringed its patent under the doctrine of equivalents. Plaintiff does not take advantage of the opportunity to respond to Defendants' argument, refusing to engage in a substantive argument, citing a lack of "fairness" that it must engage in any claim construction at this stage in the proceedings. Accordingly, the Court agrees that Plaintiff failed to adequately plead that Defendant infringed its patent under the doctrine of equivalents.

### d. Plaintiff may file a motion to replead its doctrine of equivalents claim as the Court cannot conclusively state such an amendment would be futile.

In the alternative to denying Defendants' motion, Plaintiff seeks leave to file an Amended Complaint. The Court has already explained why it is clear from the Complaint that Defendants do not directly infringe the patent and the Court remains skeptical that Plaintiff could outline a doctrine of equivalents claim.

In their motion, Defendants also argue that in 2018, they successfully explained to Plaintiff why their products did not infringe the patent and why the patent was otherwise invalid, leading to Plaintiff dismissing the California lawsuit without prejudice. Plaintiff also admits that it never bothered to examine the products at issue but relied on photographs from the internet to bring the claims. Defendants also claim that Plaintiff does not practice the patent even though it is the assignee. More notably, Defendants include information that suggests the inventor of the patent knew that there were already similar products on the market and that his patent was invalid. Defendants appear to be building a case that this Complaint was brought in violation of Rule 11.

Defendants' assertions in a brief, however, are not evidence, and Plaintiff has not been provided a complete opportunity to respond to those criticisms. And, consistent with the principles of Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts generally grant leave to amend freely. The Seventh Circuit has interpreted Rule 15(a)(2) to mean courts should usually give a claimant at least one opportunity to amend. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). However, where "it is <u>certain</u>...that any amendment would be futile or otherwise unwarranted," the court can deny leave to amend. *Id*. at 519–20 (emphasis in original). As explained above, the Court is certain that an amendment on the issue of direct infringement would be futile. However, that is not as clear as to the doctrine of equivalents.[3] In the interest of conserving judicial resources and the resources of the parties, the Court will allow Plaintiff the opportunity to file a Motion to Amend the Pleadings. Plaintiff is limited to 5-pages and must present a coherent argument about how it will overcome the deficiencies the Court has outline here. Rehashing arguments the Court has already rejected will result in a dismissal of the case.

---

[3] Plaintiff, however, made that evaluation more difficult by failing to substantively engage with Defendants' arguments.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings [13] is GRANTED. The Court need not consider Defendants' alternative argument for Summary Judgment. Plaintiff's Motion for Order Pursuant to Rule 56(d) [16] is DENIED as moot. Plaintiff has twenty-one days to file a Motion to Amend the Pleadings, as explained above. Defendants will have twenty-one days from receipt of Plaintiff's Motion to Amend to file a 3-page response.

ENTERED this, 18th day of February, 2022.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge